## Southeastern Greene School District v. Southeastern Greene Professional Association

*John Stets*, for plaintiff.
*Ronald N. Watzman*, for defendant.

TOOTHMAN, *J.*, November 3, 1982—The Southeastern Greene School District petitioned this court to grant an injunction against a strike by their teachers Association, which has persisted since the day school operations were scheduled to begin in the District, with an in-service day on August 30, 1982, and classes to commence the day following. The petition was presented on October 14, 1982, and a hearing set on the petition for October 18, 1982. At the time set for the hearing, the court believing disciplined and directed negotiations would be helpful in resolving the impasse ordered the same, and they continued through the week. These negotiations were found to be unsuccessful, with very slight or little movement by the parties, and consequently, on October 25, 1982, a hearing was held on the petition. The only testimony produced was offered by the School Board, in the person of its Superintendent, Gerald Marcinek, and business manager, Mr. Geho, with Harry Schussler, president of the teacher's Association, having been called as a hostile witness.

The testimony of Mr. Marcinek addressed the several contentions of the Board which it alleged in its petition formed the basis for the threat to the "health, safety or welfare" of the district. He related that approximately 13-15 cafeteria workers have been laid off, that the bus drivers for three independent bus contractors were unable to work, and that if the strike continues, several maintenance and secretarial personnel will have to be furloughed. Also he stated that with a drastic revision of the school calendar, and allowing for only a one-week break after Christmas the School District could only supply 169 instructional days, and if that one-week were eliminated, and only a Memorial Day holiday left in place, there could be 174 educa-

tional days provided. He also related the hardship imposed by the delay in the school opening on the seniors, making it difficult for them to complete their credits, find summer employment and gain admittance to colleges and universities for those intending to do so. However, on cross examination, he acknowledged that the educational loss could be redeemed, and that by adding 30 minutes to the daily schedule, classes could commence late in November, and the state-required 990 hours of instruction could be provided.

Floyd Geho stated that the districts present understanding from the Department of Education is that the School District will lose $5981 in state subsidies for each day less than the 180 days of education provided. He granted, on cross examination, however, that with the non-payment of wages during the strike, that even with this loss of subsidy the School District was at a financial advantage. Also, he agreed that the subsidy loss would not, under any circumstances, accrue this year.

Harry Schussler, called as upon cross examination, testified that any loss of an educational value to the students by the strike could be made-up even if the district only supplied as little as 120 to 150 educational days.

While in the court's view we find that is objectively difficult to accept the fact as presented, in their differing version by Mr. Marcinek and Mr. Schussler, that any loss of educational days can be fully made-up in terms of the students' mental and emotional benefit, we find it extremely difficult to find that plaintiff has presented sufficient evidence to compel a court ordered injunction at this stage, since the whole of the weight of the evidence as presented does not rise to the level of clearly and

convincingly showing that "a clear and present danger exists to the health, safety and welfare of the public by the continuance of the strike at this stage." On the contrary, the evidence is clear that the district, as yet, suffers no great financial loss; that the furloughed employees are entitled to unemployment compensation, and most importantly, that the lost educational time can still, and for several days to come, be recovered.

This court did not devise the language used by the legislature in determining when a court ordered injunction can apply, and we further find, as do many of the participants, that the legislative posture in which these matters are now placed, to be quite awkward and cumbersome, in that there is a void in the immediate consideration of the parent and child in the course of the proceedings. This court is not insensitive to that void, and will constantly urge, through the further negotiations, the earliest possible resolve of the issue. And we also are acutely aware, that as the loss of educational days continues the problem lends itself progressively to the substantiation of the clear and present danger test. When the testimony before the court is sufficient in quality to support that finding, we will have no hesitation in exercising the perogative of legal intervention, as held in School District of the Borough of Aliquippa v. Michael Zobrak, Dist. Field Rep. 33 Commonwealth Ct. 202, 381 A. 2d 1005 (1977); Bethal Park S.D. v. Bethal Park Federation of Teachers, 51 Commonwealth Ct. 104, 414 A. 2d 145 (1980); Bristol Township Ed. Assoc. v. School District of Bristol Township, 14 Pa. Commonwealth Ct. 463, _____ A. 2d _____ (1974); Bethal Park S.D. v. Bethel Park Federation of Teachers, 54 Commonwealth Ct. 49, 420 A. 2d 18 (1980).

## ORDER

And now, November 3, 1982, the court finds that plaintiff has not proven by clear and convincing evidence that at the time of the hearing the continuation of the strike has caused a clear and present danger to the health, safety or welfare of the public as required by law for the imposition of injunctive relief, the court at this time refuses the same. The court retains jurisdictional control of the case, however, ordering the continuation of negotiations, and reserving the right to hold further future hearings, recognizing that the continuation of the strike imposes grave hardships on several and numerous parties, and that the continued loss of educational benefits to the students becomes increasingly and progressively onerous with the passage of each day without a resolve of the matter. This being so, the primary responsibility to rectify that situation rests with the principal parties to this action, both as a practical as well as a legal matter.